UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| SATSCHEL, INC.,<br><br>                    Plaintiff,<br><br>          vs.<br><br>GREGORY WILSON,<br><br>                    Defendant. | 4:23-CV-04159-CCT<br><br><br>**ORDER GRANTING PLAINTIFF'S<br>RENEWED MOTION TO<br>DISQUALIFY COUNSEL** |

On April 23, 2025, Plaintiff Satschel, Inc. filed a renewed motion to disqualify Michael Stegawski and his firm, Convergent Litigation Associates (CLA), as counsel for Defendant Gregory Wilson in this lawsuit. Docket 68. Stegawski, who is admitted pro hac vice, and Woods, Fuller, Shultz & Smith, P.C. represent Wilson. Dockets 7, 10. Wilson opposes Satschel's renewed motion. Docket 75. For the following reasons, Satschel's motion is granted.

## BACKGROUND

In early 2022, Satschel began searching for broker-dealers to purchase so that it could expand its company's services to include providing an alternative trading system (ATS). Docket 69 at 2. Satschel describes an ATS as "a SEC-regulated trading venue in which a computerized machine matches buy and sell orders of securities." *Id.* In October 2022, Satschel and Wilson were introduced, and Satschel expressed interest in acquiring Wilson's securities broker-dealer company, Variable Investment Advisors, Inc. (VIA), based on

1

VIA's regulatory authorization to operate an ATS. *Id.* During their discussions, Wilson informed Satschel in an email about an "ATS called Liquidity Maker, which is registered with the SEC, just not active." *Id.* (quoting Docket 70-6). Satschel further claims that both Wilson and Stegawski represented that "liquiditymaker.com had ATS approval and just needed to be turned on." *Id.* According to Satschel, this information played a role in its decision to purchase Wilson's company. Docket 3 at 3–4.

On November 14, 2022, the parties executed a non-binding letter of intent. Docket 69 at 3. At the time, they were engaged in due diligence, and as part of that, "Satschel asked Wilson to '[p]rovide copies of SEC, FINRA [Financial Industry Regulatory Authority], &d State examination and/or investigation reports along with responses thereto, along with a list of any examinations that have been referred to Enforcement 2020 to the present.'" quoting Docket 70-9 at 3. Wilson did not disclose that on November 16, 2022, FINRA had informed him that its ongoing investigation from May 9, 2022, was referred to FINRA's Department of Enforcement (FINRA enforcement referral). Docket 69 at 3 (citing Docket 70-10).

The parties continued negotiations until, on January 12, 2023, Satschel and Wilson executed a Purchase and Sale Agreement (Agreement). *Id.* The Agreement was drafted by Stegawski and included several representations and warranties. *Id.* Relevant here, the Agreement provided:

> [T]here are no known and undisclosed liabilities. All known liabilities are identified in VIA's and WIMO's financial statements. The Seller also represents that there are no lawsuits or

2

> governmental investigations pending or threatened against VIA or
> WIMO.
> . . .
>
> Since November 14, 2022, there have not been any changes in
> VIA's or WIMO's financial condition, assets, or liabilities, other
> than changes in the ordinary course of business, none of which
> have been materially adverse.

Docket 3-1 at 8–9. The schedule of intangible property purchased by Satschel

under Agreement listed www.liquiditymaker.com as "the domain used for a

developmental project in 2012, that is inactive." *Id.* at 18.

According to Satschel, after the parties executed the Agreement, it

learned of significant misrepresentations by Wilson regarding the status of VIA

and liquiditymaker.com. Docket 69 at 4–5. In particular, Satschel asserts that

Wilson failed to disclose that "Wilson and VIA had unsuccessfully applied to

use liquiditymaker.com as an ATS in 2013[,]" *Id.* at 2, and that VIA was subject

to the FINRA enforcement referral, *Id.* at 5. Satschel claims it only learned

about the FINRA enforcement referral through its communications with FINRA.

*Id.*

Satschel notified Wilson and Stegawski of these misrepresentations, but

ultimately, Satschel no longer trusted Wilson and filed the present lawsuit. *Id.*

at 5–6; Docket 3. Satschel's lawsuit alleges fraud in the inducement and

rescission and restitution, with alternative claims for breach of contract and

fraud and deceit. Docket 3 at 4-7. In his answer, Wilson disputes that the

FINRA enforcement referral was not disclosed and that, in any event, it did not

need to be disclosed pursuant to the terms of the Agreement because it was not

3

a "governmental investigation." Docket 11 ¶ 17; *see also* Docket 75-1 at 106–13.[1] Wilson also denied in his answer that he misrepresented that liquiditymaker.com would be available to Satschel for the purposes outlined. Docket 11 ¶ 26.

In early 2024, Wilson filed a motion to dismiss, Docket 16, and a motion for partial summary judgment, Docket 21. While these motions were pending, Satschel filed its first motion to disqualify Stegawski and CLA, Docket 24, asserting that Stegawski will be a necessary witness in the case based on attestations he personally made in a declaration filed by Wilson, Docket 16-6, in support of the motion to dismiss. The Court denied the motion. Docket 49. While the Court noted that Wilson relied on Stegawski's personal declaration in support of the motion to dismiss, it declined to disqualify Stegawski because it could rule on that motion without considering Stegawski's personal attestations. *Id.* at 6. The Court also determined that disqualification was not warranted because there may be other means by which Satschel could obtain the information sought by Stegawski, and Satschel has not shown that the information sought was crucial to the preparation of its case. *Id.* at 5–6. However, the Court specifically advised that "Satschel is not precluded from filing a motion to disqualify" if "it becomes apparent that Stegawski will indeed be a necessary witness[.]" *Id.* at 6.

---

[1] The page citations and subsequent page citations are to the deposition pages, not the docket pages.

During discovery, Wilson testified that Stegawski was responsible for drafting the Agreement and communicated with both Wilson and Satschel during the drafting process. Docket 75-1 at 91–92; Docket 69 at 3. Wilson also testified that Stegawski was aware of the FINRA enforcement referral when he drafted the Agreement and that Stegawski "was in the background" at the time he submitted the application, that was denied, for liquiditymaker.com in 2013. Docket 75-1 at 24, 158–59. When asked whether Wilson, himself, "assist[ed] in any way with the drafting of the language of the contract," Wilson replied that all he "did was read it over. [He] did not suggest anything." *Id.* at 92.

In light of Wilson's testimony and other discovery, Satschel brings this renewed motion to disqualify Stegawski and CLA. Docket 68. Wilson opposes the motion. Docket 75.

### LEGAL STANDARD

This Court applies South Dakota law when ruling on a motion to disqualify counsel in diversity cases.[2] *Poulos v. Summit Hotel Prop., LLC*, No. CIV 09-4062-RAL, 2010 WL 2034634, at *8 (D.S.D. May 21, 2010) (citation omitted).  Under SDCL § 19-1-3,

> When an attorney is a witness for his client upon any trial except
> as to merely formal matters such as the attestation or custody of

---

[2] In his brief in opposition to Satschel's renewed motion to disqualify counsel, Wilson relies primarily on Eighth Circuit cases applying Missouri state law. This is worth noting because Missouri law, unlike South Dakota law and that from other states, allows a lawyer to continue to represent the client in pretrial proceedings even though the attorney is likely to be a necessary witness at trial. *See, e.g., Centimark Corp. v. Christofferson*, No. 4:11-CV-720 CAS, 2011 WL 13254427, at *2 (E.D. Mo. Nov. 23, 2011) ("By its own terms, Rule 4-3.7 only prohibits a lawyer from acting as an 'advocate at a trial in which the lawyer is likely to be a necessary witness.'" (citation omitted)).

5

an instrument or the like, he shall not further participate in such trial. This section shall not apply when such attorney's testimony is offered in answer to evidence received on behalf of the other party and it shall appear to the satisfaction of the court that such attorney had no reason to anticipate the necessity of his being a witness.

Further, Rule 3.7 of the South Dakota Rules of Professional Responsibility provides that: "(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client; or (4) except as otherwise provided by statute." SDCL ch. 16-18 app. The comments to Rule 3.7 note that "a balancing is required between the interests of the client and those of the tribunal and the opposing party" and "in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client." *Id.* cmt. 4.

The South Dakota Supreme Court explained that a party seeking disqualification must show: "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Harter v. Plains Ins. Co.*, 579 N.W.2d 625, 631 (S.D. 1998); *see also Rumpza v. Donalar Enters., Inc.*, 581 N.W.2d 517, 525 (S.D. 1998); *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). Disqualification is not limited to

the actual trial; rather, the statute "has the same force and logic to proceedings preparatory to the actual jury trial." *Rumpza*, 581 N.W.2d at 525.

## DISCUSSION

### 1. Whether other means exist to obtain the information than to depose Stegawski.

Satschel notes the following undisputed facts: Stegawski drafted the Agreement; Wilson testified in his deposition that he had no input on the language used in the Agreement; and Wilson's defense to Satschel's lawsuit is the language of the Agreement. Docket 69 at 10–11. It then argues that "Stegawski's testimony is necessary as to the reason certain language was included in the Purchase Agreement and his knowledge regarding the ongoing FINRA investigation and liquiditymaker.com's true status." *Id.* at 10. Satschel further asserts that Wilson cannot have it both ways—claim that Stegawski was responsible for the language in the Agreement and prevent Satschel from discovering information held only by Stegawski relevant to the terms of that Agreement. Docket 80 at 2.

In response, Wilson asserts that Satschel has not met its burden of showing "that [Stegawski] is a 'necessary' witness on a 'contested issue'" because Satschel relies only on "generalized assertions regarding Mr. Stegawski's involvement in the negotiation and drafting of the parties' Agreement[.]" Docket 75 at 17. Wilson also claims that Stegawski need not be disqualified because the information Satschel seeks to obtain from him is available through Satschel's executive, Eric Choi, and Wilson. *Id.* at 18–19. Finally, Wilson asserts that disqualification is unnecessary because there "does

not appear to be any contested issue of fact with respect to Stegawski's (non)disclosure of the prior use of www.liquiditymaker.com domain or the pending FINRA investigation" because Wilson's testimony sets forth what Stegawski was aware of at the time the parties executed the Agreement and Wilson does not intend to call Stegawski as a witness at trial. *Id.* at 21–22.

A review of the discovery in the record—in particular, the deposition of Choi taken by Stegawski on March 25, 2024—reveals that Stegawski is the only witness available to explain his perception of relevant communications he engaged in with representatives of Satschel on disputed issues of fact in this case. Not only did Stegawski participate directly in the negotiation process prior to Wilson and Satschel executing the Agreement, he acted as both an advocate and a witness on contested matters during the deposition of Choi. *See Ward v. Lange*, 553 N.W.2d 246, 253 (S.D. 1996) ("The roles of an advocate and a witness are totally inconsistent and [the attorney cannot] assume both roles at the same time." (alteration in original) (citation omitted)). Multiple times during Choi's deposition, Stegawski asked Choi questions about communications the two of them had related to liquditymaker.com and FINRA, and at other times Choi specifically referred to representations made by Stegawski. *See* Docket 46-1 at 27–28 (Stegawski was one of Choi's contacts for discussing VIA), 157 (Choi testified about times he and Stegawski discussed Satschel's intentions with liquiditymaker.com), 85–86 (Choi answered questions about the import of an email between Choi and Stegawski). But even more problematic are the times during the deposition that Stegawski

8

interjected his personal view about the meaning of communications between him and Choi. *Id.* at 87–90 (Stegawski read email language he drafted and asked Choi to agree with Stegawski's representation of what was conveyed in that email), 100–02 (Stegawski read statements he made in his personal declaration filed in the record).

Stegawski's questions of Choi did not relate to mere "formal matters such as the attestation or custody of an instrument or the like[.]" *See* SDCL § 19-1-3. Therefore, although Choi is available to testify as to his understanding of the conversations he had with Wilson and Stegawski related to the status of the FINRA enforcement referral and liquiditymaker.com, Satschel has shown that only Stegawski can testify to the information peculiarly within his knowledge on matters relevant to the disputed issues in this case.

**2. Whether the information sought is relevant and nonprivileged.**

Wilson does not appear to dispute that the information sought by Satschel is relevant. Docket 75 at 16–17 (claiming that simply because information is relevant does not lead to disqualification). However, he argues that "[t]here is questionable relevance to discussions leading up to the contract as parol evidence should only be admitted where an ambiguity is presented; and no such ambiguity appears in this case." *Id.* at 28. That argument, however, goes to whether evidence is admissible, not relevant. As it pertains to relevancy, a significant dispute in this case concerns the FINRA enforcement referral and the status of liquiditymaker.com at the time the parties executed the Agreement and, relatedly, whether the language of the Agreement bars

Satschel's claims. Thus, information bearing on those disputed matters—and within the knowledge of Stegawki—is relevant.

Wilson further claims that "[t]he testimony sought from Stegawski is privileged and not discoverable." *Id.* at 28. However, his argument in this regard is based on his view that Satschel is seeking to depose Stegawski about conversations he had with Wilson and to inquire about protected work product. *Id.* at 2, 22. Satschel responds that it "does not seek attorney-client privileged communications between Wilson and Attorney Stegawski, but rather factual testimony regarding the drafting process, a process upon which Wilson has said he had no input or part thereof." Docket 80 at 15. Satschel further contends that "the discovery sought does not relate to work done in anticipation of litigation, but rather actions and details related to the drafting of the Purchase Agreement." *Id.* at 17. Alternatively, Satschel asserts that "the issue of privilege need not be raised at this juncture, and instead the assertions of privilege, if any, is an issue to assert during the discovery process or, for example, at any potential deposition of Attorney Stegawski." *Id.* at 16.

Wilson has not made a specific assertion of privilege and has not produced a privilege log. Indeed, Wilson notes that "[t]he invocation of privilege or an objection to discovery of work product is not currently before the Court because no testimony has been taken and no objection has yet been asserted." Docket 75 at 22 n.2. In any event, much of the information relied on by Satschel in support of its motion to disqualify counsel comes from communications Satschel had with Choi or other Satschel representatives and

10

documents Wilson has filed in the docket, such as Stegawski's declaration. Therefore, Satschel has sufficiently shown that the information sought is nonprivileged.

### 3. Whether the information sought is crucial to the preparation of Satschel's case.

Satschel contends that the information sought from Stegawski is crucial to the preparation of its case because Stegawski drafted the Agreement with knowledge of the status of the FINRA enforcement referral and liquiditymaker.com and Wilson relies on the specific language in the Agreement in defense of Satschel's lawsuit. Docket 69 at 12–13. Satschel's complaint sets forth claims for fraud, breach of contract, and deceit based on its belief that Wilson concealed the FINRA enforcement referral and the true status of liquiditymaker.com. *See generally* Docket 3. Crucial to these claims is both the language of the Agreement and what was known by the parties prior to executing the Agreement. Importantly, Satschel has shown that Stegawski's "conduct went beyond that of giving legal advice"; he participated directly in the negotiation process. *See Rumpza*, 581 N.W.2d at 525. In fact, in his opposition to Satschel's first motion to disqualify counsel, Wilson represented that Stegawski was involved in the discussions and negotiations leading up to the execution of the Agreement and in the matters before the SEC and FINRA related to VIA. Docket 32 at 11–12. The Court concludes that the information Satschel seeks from Stegawski is crucial to Satschel's preparation of its case.

### 4. Whether disqualification would work a substantial hardship on Wilson.

Wilson argues that disqualifying Stegawski from representing him will deprive him of Stegawski's pre-existing knowledge and expertise gained through his work with Wilson over the years on matters relevant to this case. Docket 75 at 25. However, the Court notes that Wilson represented in Docket 32 at 19, in response to Satschel's original motion to disqualify, that if Stegawski should be disqualified, "[t]here would be no delay in the proceedings" and Wilson "would rely upon Sander Morehead, or other appointed counsel, to try the case." Wilson does not identify a reason why the above statement is no longer true. The Court thus concludes that disqualification would not work a substantial hardship on Wilson.

### CONCLUSION

The Court is mindful that "[b]ecause of the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict judicial scrutiny." *Midwest Motor Sports*, 347 F.3d at 700–01 (quoting *Harker v. Comm'r,* 82 F.3d 806, 808 (8th Cir. 1996)). Here, however, it is reasonably foreseeable that Stegawski will be a witness; therefore, he must be disqualified from further representing Wilson in this case to avoid continuing to assume the role of an advocate and witness at the same time. *See* SDCL ch. 16-18 app. Rule 3.7 cmt. 4; *Ward*, 553 N.W.2d at 253.

Accordingly, it is hereby

ORDERED that Satschel's renewed motion to disqualify counsel, Docket 68, is granted. It is further

12

ORDERED that Michael Stegawski and Convergent Litigation Associates are disqualified from further representing Gregory Wilson in this matter. It is further

ORDERED that Satschel may depose Micheal Stegawski on nonprivileged, relevant information.

DATED November 5, 2025.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE