UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| SATSCHEL, INC.,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>GREGORY WILSON,<br><br>　　　　Defendant. | 4:23-CV-04159-CCT<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Gregory Wilson moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment on all claims asserted by Plaintiff Satschel, Inc. Docket 82. Satschel opposes the motion. Docket 85. For the following reasons, the Court denies Wilson's motion.

## BACKGROUND

Much of the relevant background is set out in this Court's October 2024 order denying Wilson's motion to dismiss and motion for partial summary judgment. Docket 51. In summary, Satschel brought this suit against Wilson in October 2023, alleging fraud in the inducement and rescission and restitution in connection with the parties' Purchase and Sale Agreement (Agreement) executed on January 12, 2023. Docket 3. In the alternative, Satschel alleges breach of contract and fraud and deceit. *Id.* Satschel also seeks punitive damages. *Id.*

1

Wilson moved to dismiss Satschel's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), alleging that "[n]o injury has yet to be sustained and a contingent liability is too abstract at this stage to support a cause of action." Dockets 16 and 17. He also filed a motion for partial summary judgment on Satschel's claim that Wilson failed to disclose a Securities and Exchange Commission (SEC) examination concerning Wilson's company, Variable Investment Advisors, Inc. (VIA). Docket 21; Docket 22 at 2.

The Court denied the motion to dismiss, concluding that "Satschel's suit is not based on a hypothetical or speculative disagreement; it concerns representations already made by Wilson prior to the parties executing the Agreement." Docket 51 at 5. Also, "Satschel alleges a current, rather than abstract, injury of at least $1,000,000, representing what it otherwise would not have paid Wilson had it known the true facts prior to executing the Agreement." *Id.* As it relates to Wilson's motion for partial summary judgment, the Court noted Satschel's concession that Wilson disclosed the SEC examination prior to executing the Agreement. *Id.* at 7. Therefore, the Court granted Satschel's request to strike that allegation from the complaint and denied Wilson's motion for partial summary judgment. *Id.*

Satschel's remaining claims against Wilson are based in large part on two allegations, namely that prior to the execution of the Agreement, Wilson failed to disclose and materially misrepresented VIA's FINRA investigation and enforcement referral (hereinafter "FINRA investigation") and (2) failed to disclose and materially misrepresented the true status of liquiditymaker.com.

2

Docket 3 at 4–5; Docket 84 at 10; Docket 85 at 3. Wilson now moves for summary judgment on Satschel's remaining claims. Docket 82. He contends that Satschel's complaint should be dismissed in its entirety because Satschel cannot prove damages as a matter of law even if this Court accepts Satschel's allegations as true. Docket 84 at 18–26. He also asserts that Satschel's fraud and deceit claims fail as a matter of law because it was on notice that VIA was not approved to conduct private placements and alternatively that Wilson did not have a duty to disclose the 2013 regulatory application for liquiditymaker.com. *Id.* at 25, 36–38; Docket 91 at 15–18. As it pertains to the breach of contract claim, Wilson argues that the undisputed material facts show he did not breach the Agreement. Docket 84 at 31–34. Wilson further contends that Satschel's request for the equitable remedy of recission is not available. *Id.* at 35–36. Finally, Wilson argues that Satschel's claims are foreclosed by its default under the terms of the Agreement. *Id.* at 39.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law." *NDN Collective v. Retsel Corp.*, No. 5:22-CV-5027, 2024 WL 3903975, at *2 (D.S.D. Aug. 22, 2024) (citations omitted). "The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has

3

not presented evidence sufficient to support an element of its case on which it bears the ultimate burden of proof." *Id.* (citation omitted). "Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must present facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *S. Black Hills Water Sys., Inc. v. Town of Hermosa*, No. 5:21-CV-05070-VLD, 2023 WL 4824956, at *4 (D.S.D. July 27, 2023) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); Fed. R. Civ. P. 56(e)). The Court will "review the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party." *Musolf v. J.C. Penney Co., Inc.*, 773 F.3d 916, 918 (8th Cir. 2014) (citation omitted).

## DISCUSSION

**1. Whether Satschel can prove it suffered damages.**

Wilson contends that he is entitled to summary judgment on Satschel's remaining claims because Satschel will be unable to prove damages.[1] Docket 84 at 18. He offers multiple arguments in support, asserting first that Satschel was not damaged by the alleged misrepresentation regarding the status of liquiditymaker.com because Satschel had decided—before it learned of the alleged misrepresentation—to operate the ATS originally intended for VIA through another company Satschel purchased (ARQ Securities). Docket 91 at

---

[1] Although Wilson cites South Dakota law on punitive damages, he does not make a specific argument that Satschel is not, as a matter of law, entitled to pursue its request for punitive damages. Therefore, the Court's order does not address the propriety of Satschel's request for punitive damages.

4

8–10; Docket 84 at 18–19. In essence, Wilson contends that even if he misrepresented the status of liquiditymaker.com, Satschel was not impacted by that decision when it entered into the Agreement because it ultimately chose to use Satschel's other company to operate the ATS. Docket 91 at 8–10.

Wilson's argument in this regard is based on a characterization of the evidence in a light most favorable to Wilson's theory of the case. However, on summary judgment, the Court must view the evidence in a light most favorable to Satschel, the nonmoving party. *Musolf*, 773 F.3d at 918. In that light, the evidence in the record reveals that Satschel was searching for two broker dealers and two ATSs in 2022, and that it acquired ARQ Securities shortly before meeting Wilson in September 2022 to discuss the purchase of VIA.[2] *See* Docket 46-1 at 162–63; Docket 74-2 at 41–43; Docket 74-3 at 22–24. The record also shows that Wilson knew of Satschel's plan to have two ATSs and presented Satschel with liquiditymaker.com as an ATS that "is registered with the SEC, just not active." Docket 85 at 8 (quoting an email by Wilson to Choi dated October 11, 2022); Docket 46-1 at 89–90; Docket 74-3 at 126; Docket 75-1 at 85–86. Finally, Satschel notes that Choi, as Satschel's representative, testified that he relied on this representation when executing the Agreement. Docket 85 at 16; Docket 46-1 at 156–57. Therefore, Wilson has not established

---

[2] Wilson argues that Satschel's arguments in response to Wilson's motion for summary judgement rely on allegations not pled in its complaint and thus Satschel is improperly attempting to amend its complaint through a responsive brief. Docket 91 at 1–3. The Court's review of Satschel's responsive brief does not reveal an attempt by Satschel to add new claims against Wilson. Rather, Satschel is responding to Wilson's summary judgment arguments with direct evidence, produced in discovery, supporting the claims asserted in its complaint.

that Satschel's decision to operate an ATS through ARQ Securities means Satschel will be unable to prove damages as a matter of law.

Alternatively, Wilson contends that Satschel cannot prove damages related to liquiditymaker.com because that domain was available to Satschel for its intended use, and Satschel merely speculates that it was not available upon closing of the Agreement. Docket 84 at 23–24. More specifically, Wilson asserts that "Satschel does not have any admissible evidence to support the assertion that the www.liquiditymaker.com domain was not available to Satschel upon closing for its use" and further that "there is no known impediment to the use of the website." *Id.* at 24.

On the contrary, the record contains evidence that Wilson had applied for liquiditymaker.com to be authorized as an ATS and that the application was denied by FINRA in 2013, Docket 75-1 at 85–86, making it unavailable for that use at the time the parties executed the Agreement in January 2023, Docket 70-14. The record also contains evidence that Satschel did not learn that liquiditymaker.com was not available for its intended use until after the execution of the Agreement. Docket 46-1 at 95–99, 157–58; Docket 70-14.

Wilson next advances a broader argument that Satschel cannot prove damages in support of any claim in the complaint because it did not retain an expert to "establish the potential negative effect of a previously filed FINRA regulatory application" on Satschel's later application with FINRA or retain an expert to establish that the FINRA investigation was material. Docket 84 at 21. According to Wilson, these matters require expert testimony because they are

6

scientific, technical, or otherwise specialized in nature, and a jury would be left to speculate as to how Satschel was damaged. *Id.* at 22.

"[O]ne seeking to recover damages for fraud in a law action must prove that he has suffered a loss directly from, and as a clear and necessary consequence of, the fraud." *Slota v. Imhoff and Assocs., P.C.*, 949 N.W.2d 869, 877 (S.D. 2020) (alteration in original) (citation omitted). "Expert testimony is necessary to prove causation for damages in circumstances where 'conclud[ing] otherwise would effectively allow the jury to speculate on an unguided determination of causation[.]'" *Estate of Olson v. Agtegra Coop.*, 9 N.W.3d 763, 769 (S.D. 2024) (alterations in original) (citation omitted).

Here, accepting Satschel's allegations as true, the focus is not on whether Wilson's misrepresentations negatively impacted Satschel *after* the Agreement was executed or to what extent the misrepresentations financially harmed Satschel's plans *after* it purchased VIA. Rather, Satschel contends that absent Wilson's misrepresentations, it never would have executed the Agreement and paid Wilson $1,000,000. Docket 3 ¶ 33; *see also* Docket 84 at 14. In this regard, Satschel has presented evidence that it suffered a loss of at least $1,000,000 as a clear and necessary consequence of Wilson's failure to disclose the FINRA investigation and material misrepresentation of the status of liquiditymaker.com.[3] This amount can be proved with reasonably certainty

---

[3] Although Wilson argues that "[t]here is insufficient evidence to present the issue of lost profits to the trier of fact[,]" Docket 84 at 27, Satschel has not alleged damages based on future lost profits.

7

and without speculation. *See Lord v. Hy–Vee Food Stores,* 720 N.W.2d 443, 454 (S.D. 2006) (noting that there is no specific formula for calculating damages; there must "be proof of a rational basis for measuring loss, without allowing a jury to speculate").

Wilson has not demonstrated an absence of material issue of fact in dispute on the question whether Satschel is able to prove damages. Therefore, Wilson has not shown entitlement to summary judgment on this basis.

### 2. Whether Satschel was on notice that VIA was not approved to conduct private placements.

Wilson asserts that Satschel cannot prove its fraud and deceit claims related to liquiditymaker.com because "[t]he undisputed evidence before the Court is that Satschel's executives were on notice that VIA did not possess the regulatory permissions to operate a trading system for the private placement of securities." Docket 91 at 16; *see also* Docket 84 at 25 ("Satschel was aware that VIA was not approved to conduct private placements."). Wilson relies on "all of the core documents provided to Satschel prior to closing" and, in particular, the Form BD disclosure and FINRA BrokerCheck Report. Docket 91 at 16; Docket 84 at 25. In Wilson's view, these documents "clearly indicate that VIA was not approved to conduct private placement business" and thus that the use of liquiditymaker.com to conduct private placements would require regulatory approval. Docket 91 at 16; Docket 84 at 25.

While the record discloses that Wilson provided Satschel executives VIA's Form BD and FINRA BrokerCheck Report, deposition testimony in the record by Satschel executives establishes that these core documents did not inform

8

Satschel that liquiditymaker.com was unavailable to operate an ATS. *See* Docket 46-1 at 63–69; Docket 74-2 at 138–41; Docket 74-3 at 44–48. Rather, as Choi explained, the information in these disclosures informed Satschel what business VIA was currently engaged in, not what it was unauthorized to do. Docket 46-1 at 63–69. Satschel also relies on the representations made by Wilson and his attorney during negotiations and prior to the execution of the Agreement that liquiditymaker.com was inactive but could be turned on.[4] *Id.* at 88–89.

Viewing the evidence in a light most favorable to Satschel, Wilson has not shown an absence of disputed fact regarding Satschel's notice; therefore, summary judgment on this basis is unwarranted.

### 3. Whether Satschel can prove that Wilson breached the Agreement.

Satschel's breach of contract claims are based on allegations that Wilson breached its obligations under paragraphs 12.4 and 12.5 of the Agreement by not "provid[ing] accurate information to Satschel before, during, and after the

---

[4] Wilson contends that parol evidence of any verbal representations made prior to the execution of the Agreement is not admissible because there is no claim that the Agreement is ambiguous. Docket 84 at 27–29. He recognizes that parol evidence is admissible to demonstrate fraud, but it appears he believes the type of fraud alleged by Satschel does not authorize the admission of parol evidence. *Id.* at 29; Docket 91 at 20–21. However, the South Dakota Supreme Court has made clear that "parol or extrinsic evidence is admissible to prove fraud." *Poeppel v. Lester*, 827 N.W.2d 580, 585 (S.D. 2013). There is great latitude to this rule. *Id.* As the court explained, "[n]o matter how clear and unambiguous a contract might be, parol evidence may be offered to show that the contract is invalid because of fraud in its inducement." *Id.* Thus, even if a contract is completely integrated, parol evidence is admissible when fraud is alleged as a ground for recission. *Id.*; *see also Oxton v. Rudland*, 897 N.W.2d 356, 360 (S.D. 2017) (recognizing that parol evidence is admissible in cases of fraud even though "the contract is clear, unambiguous, and fully integrated").

due diligence phase of the transaction, when Wilson made material misrepresentations and suppressed material facts associated with VIA and WIMO." Docket 3 ¶¶ 42–44. In paragraph 12.4, the Agreement provides that Wilson:

> [r]epresents and warrants that there are no known and undisclosed liabilities. All known liabilities are identified in VIA's and WIMO's financial statements. The Seller also represents that there are no governmental investigations pending or threatened against VIA or WIMO.

Docket 3-1 at 8. Paragraph 12.5 provides that "[s]ince November 14, 2022, there have not been any changes in VIA's or WIMO's financial condition, assets, or liabilities, other than changes in the ordinary course of business, none of which have been materially adverse." *Id.* at 9.

As it pertains to these contract provisions, Wilson asserts no breach occurred because there were no lawsuits or governmental investigations pending against VIA and further that Satschel has not identified any. Docket 84 at 35. Wilson also contends that no breach occurred because he was not required to disclose the FINRA investigation in VIA's financial statements. Docket 84 at 31–34; Docket 91 at 18–20. As support, Wilson directs this Court to paragraph 12.3 of the Agreement, which provides that Wilson delivered financial statements to Satschel that "to the best of [Wilson's] knowledge, are true and complete and have been prepared in accordance with Generally Accepted Accounting Principles." Docket 3-1 at 8. He then relies on the expert report prepared by James D. Martin, wherein Martin examined certain accounting standards, regulations, and case law and opined that the FINRA

10

investigation did not need to be disclosed in VIA's financial statements as of December 31, 2022.[5] Docket 84 at 33–34; Docket 45-1 ¶¶ 6, 38; Docket 91 at 18–19.

Satschel acknowledges that "FINRA is not technically a governmental body[.]" Docket 85 at 7 n.2. However, it claims that Wilson had a duty to disclose the FINRA investigation because that information was sought and not disclosed during the parties' due diligence leading up to the execution of the Agreement.[6] *Id.* at 5–6. Satschel further asserts that facts are in dispute regarding whether the FINRA investigation was the type of liability that needed to be disclosed. *Id.* at 22.

On the record before the Court, Wilson has not shown the absence of a genuine issue of material fact on the question whether he breached the Agreement. While the accounting standards regarding disclosure relied on by Wilson are not in the record, the expert report by Martin explains that materiality "is a subjective assessment based on the specific facts and circumstances of each case" and further that disclosure is based in part on the judgment of the company making the decision whether disclosure is required.

---

[5] Satschel responds that the accounting standards relied on by Wilson as it relates to materiality were not incorporated into the parties' Agreement. Docket 85 at 22. Wilson disagrees, claiming that the standards he relies on are "the common set of accounting rules, standards, and practices that companies in the United States use to prepare and report their financial statements." Docket 91 at 18. The Court need not resolve whether the standards cited by Wilson apply at this juncture because even assuming they apply, Wilson is not entitled to summary judgment.

[6] During due diligence, Satschel asked Wilson to "[p]rovide copies of SEC, FINRA, & State examination and/or investigation reports along with responses thereto, along with a list of any examinations that have been referred to Enforcement 2020 to Present." Docket 70-9 at 3.

Docket 45-1 ¶¶ 13–14. Martin then notes that Wilson believed that the FINRA investigation would result in a finding of a minor rule violation and that "[i]t was the opinion of Mr. Wilson that as of December 31, 2022, the FINRA investigation was immaterial." *Id.* ¶¶ 25, 38. Martin himself opined "that disclosure of the FINRA investigation in VIA's financial statements as of December 31, 2022 was not required." *Id.* ¶ 39. However, and importantly, he did not definitively opine that the investigation was *not material.* Rather, Martin opined that "the FINRA investigation *appeared* to have been immaterial." *Id.* ¶ 41 (emphasis added).

Setting aside the indefiniteness of Martin's opinion on materiality, the opinion likewise fails to warrant summary dismissal because it does not establish an absence of disputed fact on materiality at the time the parties executed the Agreement. In fact, Martin's opinion is based in part on what occurred *after* the parties executed the Agreement, namely a letter from FINRA, dated February 16, 2023, advising Wilson that "[t]his inquiry should not be construed as an indication that the Department of Enforcement or its staff has determined that any violations of federal securities laws or FINRA, NASD, or MSRB rules have occurred." *Id.* ¶ 36 (alteration in original). Moreover, as Satschel points out, before the investigation concluded, Wilson had expressed concern about the investigation in an email to Choi on September 5, 2023, stating, "I don't want and I am sure Satschel does not want the records to show 'what may be an extended or permanent designation of the firm as statutorily disqualified.'" Docket 70-19. This email exchange also contains a

12

communication with FINRA on August 29, 2023, regarding the severity of the suggested sanction. *Id.* While these communications occurred after the parties executed the Agreement, they shed light on Wilson's subjective opinion, based on his years of experience, that the FINRA investigation was not material and did not need to be disclosed.

While the FINRA investigation resulted in only a cautionary letter, neither Martin's expert report nor Wilson's additional evidence establish the absence of a material issue of fact in dispute on Satschel's breach of contract claim. Thus, Wilson is not entitled to summary judgment on that claim.

### 4. Whether Wilson had a duty to disclose the 2013 regulatory application for liquiditymaker.com.

Wilson asserts that he "had no duty to disclose a ten-year-old regulatory application, for another trading system, simply because that system sought to use the www.liquiditymaker.com domain" because he was not in a "fiduciary relationship" with Satschel.[7] Docket 84 at 36–38. In response, Satschel notes that it does not rely solely on a failure of disclosure; it also asserts that "Wilson affirmatively introduced the website, misrepresented its status, and either continued his misrepresentations or failed to correct them" to induce Satschel into purchasing VIA. Docket 85 at 10–11.

---

[7] Wilson also claims that he did not have a duty to disclose the FINRA investigation in VIA's financial statement because it was not material, and thus, there can be no misrepresentation or omission. Docket 84 at 34. As previously addressed, whether the FINRA investigation was material is in dispute. Moreover, Satschel's fraud claim does not relate solely on what Wilson disclosed or failed to disclose in VIA's financial statement; Satschel relies on affirmative misrepresentations made by and on behalf of Wilson prior to the parties executing the Agreement.

13

> South Dakota law provides that:
>
> Actual fraud in relation to contracts consists of any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:
>
>> (1) The suggestion as a fact of that which is not true by one who does not believe it to be true;
>> (2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true;
>> (3) The suppression of that which is true by one having knowledge or belief of the fact;
>> (4) A promise made without any intention of performing it; or
>> (5) Any other act fitted to deceive.

SDCL § 53-4-5. The tort of deceit is a species of fraud, *Rist v. Karlen*, 241 N.W.2d 717, 719 n.1 (S.D. 1976), and "includes '[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true[,]' made 'with intent to induce him to alter his position to his injury or risk[,]'" *Knecht v. Evridge*, 940 N.W.2d 318, 333 (S.D. 2020) (alterations in original) (quoting SDCL § 20-10-2(1); SDCL § 20-10-1).

Here, the evidence previously identified sets forth material issues of fact in dispute on Satschel's fraud claims, including Wilson's representations and Satschel's reliance. Therefore, there are material issues of fact in dispute, and Wilson has not shown entitlement to summary judgment on these claims.

### 5. Whether the equitable remedy of rescission is unavailable.

Satschel seeks rescission of the Agreement and restitution based on Wilson's fraud. Docket 3 ¶¶ 34–38. Wilson argues that Satschel's request for relief in this regard must be denied because "there has not been a total failure of consideration[,]" and "Satschel has an adequate remedy at law, monetary

14

damages, even if it has failed to provide any evidence of what those damages might be." Docket 84 at 35. Wilson further claims that this Court cannot restore the parties to the status quo because he has substantially performed, he cannot regain his lost time, and he cannot recover the knowledge about VIA imparted to Satschel executives. *Id.* at 35–36. Finally, Wilson contends that Satschel may not seek rescission because it affirmed the Agreement by delaying its request for rescission. Docket 84 at 36.

A review of South Dakota law on rescission does not support foreclosing, on summary judgment, Satschel's request for rescission. The right to rescission is clearly provided for in South Dakota law. *See* SDCL § 21-12-1; SDCL § 53-11-2; *see also Chamberlain Livestock Auction, Inc. v. Penner*, 462 N.W.2d 479, 481 (S.D. 1990) (noting that rescission of a contract is available when a contracting party's consent is obtained through fraud). Further, "although a party may not rescind if he has an adequate remedy at law, the party is entitled to rescission in case of a breach going to the very basis of the contract." *Northwest Realty Co v. Carter*, 338 N.W.2d 669, 672 (S.D. 1983). As the South Dakota Court explained,

> [W]hen a plaintiff is defrauded, he may bring a tort action or contract action based on the same facts. But when the remedies result in double recovery, he must elect the remedy. "He may affirm the contract and bring a tort action for deceit [seeking monetary damages], or he may repudiate the contract and bring a contract action for rescission or revision." *Aschoff v. Mobil Oil Corp.*, 261 N.W.2d 120, 123 (S.D. 1977) (citing William L. Prosser, *Handbook of the Law of Torts* 683–736 (4th ed. 1971); Samuel Williston, *A Treatise on the Law of Contracts* §§ 1523–31 (Walter H.E. Jaeger ed., 3d ed. 1957)). *See also U.S. Lumber, Inc. v. Fisher*, 523 N.W.2d 87, 89 (S.D. 1994). This election of remedies rule does not prevent

15

plaintiffs from pursuing "alternative remedies so long as no double recovery is awarded." *Ripple v. Wold,* 549 N.W.2d 673, 674–75 (S.D. 1996).

*Stabler v. First State Bank of Roscoe*, 865 N.W.2d 466, 475 (S.D. 2015) (second alteration in original).

Also, when rescission is sought, the South Dakota Supreme Court does not require placing two contracting parties in the exact status quo; a substantial restoration is sufficient. *See Vermilyea v. BDL Enters., Inc.*, 462 N.W.2d 885, 889 (S.D. 1990). Finally, while a "[f]ailure of a party to disaffirm a contract over a period of time may ripen into ratification," the delay must prejudice the other party, and here, Wilson has not claimed prejudice as a result of the delay. *See Shedd v. Lamb*, 553 N.W.2d 241, 244–45 (S.D. 1996); *Kane v. Schnitzler*, 376 N.W.2d 337, 340 (S.D. 1985).

### 6. Whether Satschel defaulted under the Agreement, foreclosing Satschel's claims against Wilson.

Wilson contends that "[t]his Court lacks subject matter jurisdiction because Satschel's claims have been rendered moot" when Satschel defaulted under its payment obligation in the Agreement. Docket 84 at 39. He also asserts that Satschel's claim for money damages is likewise moot because it defaulted on its obligations under the Agreement and forfeited its interest in VIA. Docket 91 at 12. Wilson has not directed this Court to authority supporting these arguments. As such, Wilson has not met his burden of showing an entitlement to summary judgment on this basis. *See NDN*

16

*Collective*, 2024 WL 3903975, at *2 (providing that the moving party must show entitlement to a judgment as a matter of law).

## ORDER

Based on all the reasons expressed herein, it is hereby

ORDERED that Wilson's motion for summary judgment, Docket 82, is denied.

DATED November 5, 2025.

                                              BY THE COURT:

                                              /s/ *Camela C. Theeler*
                                              CAMELA C. THEELER
                                              UNITED STATES DISTRICT JUDGE