UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SATSCHEL, INC., <br><br>            Plaintiff, <br><br>vs. <br><br>GREGORY WILSON, <br><br>            Defendant. | 4:23-CV-04159-CCT <br><br>ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL <br><br>DOCKET NO. 63 |

## INTRODUCTION

This matter is before the court on Satschel, Inc.'s complaint sounding in diversity against Gregory Wilson.  See Docket No. 3.  Satschel asserts claims of fraud in the inducement, rescission and restitution, and breach of contract in association with Satschel's purchase of Wilson's shares in Variable Investment Associates, Inc. (VIA) and Wilson Insurance Marketing Organization, LLC (WIMO).  Id.  Now pending is a motion to compel discovery filed by plaintiff Satschel.  Docket No. 63.  The district court referred Satschel's motion to this magistrate judge for a recommended disposition.  See Docket No. 81.

## FACTS

Satschel was interested in purchasing a securities broker dealer so as to operate an alternative trading system (ATS).  The Securities and Exchange

Commission explains that an ATS is a trading system that meets the definition of an "exchange" under federal securities laws but is not required to register as a national securities exchange so long as the ATS qualifies for an exemption and complies with certain regulatory rules.[1] VIA owns the domain liquiditymaker.com. In 2012-13, VIA applied to the Financial Industry Regulatory Authority (FINRA) seeking permission to use its liquiditymaker.com domain as an ATS and that application was denied.

Eric Choi, Satschel's acting Chairman of the Board and President, was introduced to Wilson in September 2022 because VIA is a securities broker dealer. Satschel alleges Wilson told Choi that liquiditymaker.com was eligible to be used as an ATS, but was currently inactive. On November 12, 2022, Choi and Wilson signed a letter of intent for Satschel to purchase VIA. The parties signed a purchase and sale agreement on January 13, 2023. Satschel paid Wilson $1 million pursuant to the agreement and was obligated to pay another $2 million later.

Satschel's complaint alleges that at the time Wilson entered into the letter of intent and the purchase agreement, Wilson knew that the liquiditymaker.com domain would not be permitted to operate an ATS because of the failed 2012-13 application which Wilson never revealed to Satschel. Further, Satschel alleges that Wilson represented in the agreement that VIA

---

[1] See https://www.sec.gov/foia-services/frequently-requested-documents/alternative-trading-system-ats-list, last checked November 17, 2025.

was not the subject of any governmental investigations or threatened investigations, but in fact a FINRA investigation was pending at the time Wilson signed the agreement. Satschel alleges that had it known of these two facts, it would not have entered into the agreement with Wilson to purchase VIA.

Satschel served Wilson with written discovery requests on January 7, 2025. See Docket No. 65-15. Wilson provided written responses February 6, 2025, with which Satschel was unsatisfied. See Docket No. 65-16. Thereafter, the lawyers for both parties met and conferred. Two categories of documents were discussed: (1) Wilson's FINRA documents relating to liquiditymaker.com and (2) Wilson's financial information relevant to Satschel's punitive damages claim. Wilson sought additional time to consider whether to produce the first category of documents. Wilson agreed to produce a financial statement with the understanding that Satschel could request the underlying support documents if necessary.

On March 10, 2025, Wilson supplemented his discovery responses by providing a two-page summary of his assets and liabilities, but only listed assets with a value greater than $10,000. See Docket No. 65-19 at 7-8. No FINRA documents relative to liquiditymaker.com were produced.

Satschel again notified Wilson that it wanted the FINRA documents. See Docket No. 65-20. Satschel also notified Wilson that it did not find his financial statement acceptable and offered to limit the statement to assets with

3

a value of $1,000 or more.  Id.  Wilson responded by filing a motion for dismissal due to alleged discovery abuses by Satschel.  See Docket No. 61. Satschel then filed the instant motion to compel.  See Docket No. 63.

## DISCUSSION

### A.   Punitive Damages

Satschel served Wilson with interrogatory number 1, which requested the following discovery:

> 1.   Identify Your personal current net worth, including but not limited to gross income and expenses, net income or deficit, net worth and total indebtedness for the past three (3) years.

See Docket No. 65-15 at 3.  In response, Wilson objected, but produced a two-page statement of net worth identifying all of Wilson's assets or liabilities that exceed the value of $10,000.  See Docket No. 65-19 at 4, 7-8.

Wilson's first objection to providing the discovery requested regarding his net worth is that the motion is moot because the court is surely going to dismiss Satschel's claims.  The district court dispensed with this ground for resisting discovery when it denied Wilson's motion for summary judgment.

Wilson's next ground for objection to the discovery is that it is disproportionate to the needs of the case.[2]  Wilson includes in his brief no estimate of how long it would take him to provide the discovery or the cost of

---

[2] Wilson also asserts the specious argument that punitive damages are not available for breach of contract, which is true, but which overlooks Satschel's claim for fraud for which punitive damages are available.

4

doing so. He only argues that granting Satschel's request for financial information for items worth $1,000 or more would require him to disclose personal property such as computers and household appliances.

The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive," --or in this case disproportionate—is insufficient to carry the resisting party's burden--that party must make a specific showing of reasons *why* the relevant discovery should not be had. Cincinnati Ins. Co. v. Fine Home Managers, Inc., 2010 WL 2990118, *1 (E.D. Mo. 2010); Burns v. Imagine Films Entertainment, Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

Several courts have determined that where the discovery requests are relevant, the fact that answering them will be burdensome and expensive is not in itself a reason for a court's refusing to order discovery which is otherwise appropriate. See In re Folding Carton Antitrust Litigation, 83 F.R.D. 260, 265 (N.D. Ill. 1979) (stating that "[b]ecause the interrogatories themselves are relevant, the fact that answers to them will be burdensome and expensive 'is not in itself a reason for refusing to order discovery which is otherwise appropriate' "); Alexander v. Parsons, 75 F.R.D. 536, 539 (W.D. Mich. 1977) (stating that "the mere fact discovery is burdensome . . . is not a sufficient objection to such discovery, providing the information sought is relevant or may lead to the discovery of admissible evidence"); and Burns, 164 F.R.D. at 593 (determining that the fact that answering interrogatories will require the

5

objecting party to expend considerable time, effort, and expense consulting, reviewing, and analyzing huge volumes of documents and information is an insufficient basis for an objection). Moreover, if discovery requests are relevant, the fact that they involve work, which may be time consuming, is not sufficient to render them objectionable. See United States v. Nysco Labs., Inc., 26 F.R.D. 159, 161-62 (E.D.N.Y. 1960)and Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 245 (N.D. W. Va. 1970) (stating that "[i]nterrogatories, otherwise relevant, are not objectionable and oppressive simply on grounds [that] they may cause the answering party work, research and expense").

Here, the discovery is relevant. Satschel has asserted a claim for punitive damages. See Docket No. 3 at 7-8. Where a claim for punitive damages is asserted, the defendant's net worth is a relevant factor for the jury to consider in determining whether and how much to award in punitive damages. Roth v. Farner-Boken Co., 667 N.W.2d 279, 666 (S.D. 2003). Having established that the discovery sought is relevant, the burden shifts to Wilson to demonstrate undue burden or disproportion. Wilson has not carried that burden.

Rule 26 of the Federal Rules of Civil Procedure establish that any nonprivileged matter that is relevant to a claim or defense is discoverable so long as it is proportional to the needs of the case. See Fed. R. Civ. P. 26(b)(1). Proportionality is evaluated by considering the amount in controversy, the importance of the issues at stake in the action, the parties' relative access to

relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Id. Information need not be admissible in evidence at the trial in order to be relevant for purposes of discovery. Id.

Here, if Satschel succeeds in proving its case, its $1 million payment previously made to Wilson will be returned plus the potential for punitive damages. The Supreme Court has held that the Due Process Clause of the Constitutional generally will not countenance a punitive damages award the ratio of which to compensatory damages exceeds a single-digit ratio. State Farm Mut. Auto. Inc. Co. v. Campbell, 538 U.S. 408, 425 (2003). Applying a 9:1 ratio then, Satschel could constitutionally obtain an award of punitive damages of up to $9 million. Thus, the amount in controversy in this case is substantial.

The importance of the issues at stake also favor granting Satschel this discovery. While Satschel's claims must be heard and determined by a jury, if they have merit, they indicate a citizen of the State of South Dakota defrauded Satschel of a substantial sum of money. Were the claims worthy of merit but not redressed, this could impact the ability of other law-abiding citizens of South Dakota to engage in commerce and contracts. No one would want to do business with a South Dakota resident if commercial rules and norms were not upheld. Punitive damages are often seen as an implement to bring about

7

change in business practices, so the claims themselves are important, but so too is the punitive damages element.

The court is unable to evaluate the parties' resources other than to note that Wilson has $1 million of Satschel's money (the first installment payment under the purchase agreement), which enables him to bear at least some burden of expense in producing this discovery. In addition, the information is in Wilson's sole possession; Satschel cannot obtain the discovery from any other source.

Wilson has not carried his burden to demonstrate that the relevant discovery requested by Satschel is disproportionate to the needs of the case. Evaluating the information known to the court at this junction, it is not patently clear that the discovery is disproportionate. Accordingly, the court will grant Satschel's motion to compel Wilson to provide a revised financial statement that includes all assets with a value of $1,000 or more. In doing so, Wilson can group assets of lesser value together and provide a lump sum estimate of their value so long as the financial statement clearly reflects that is what he is doing. For example, he might state "$10,000 estimated household appliances," or "$20,000 estimated electronics."

**B.     FINRA Documents**

Satschel served Wilson with requests for the production of documents 9, 10 and 11. Those requests sought discovery as follows:

8

> 9. [Please produce] All documents and communications (including, but not limited to, letters, emails) related to Your or VIA's application for use of liquiditymaker.com as an ATS with FINRA or its agents, representatives, or officials (Matter ID: 20130366288).
>
> 10. [Please produce] All documents and communications (including, but not limited to, letters, emails) from FINRA or its agents, representatives, or officials to You, VIA, or Your attorney related to Your or VIA's application for use of liquiditymaker.com as an ATS with FINRA in 2013 (Matter ID: 20130366288).
>
> 11. [Please produce] All CMAs[3] and associated documents filed with FINRA regarding Your or VIA's application for use of liquiditymaker.com as an ATS with FINRA in 2013 (Matter ID: 20130366288).

See Docket No. 65-15 at 4. Wilson produced no documents in response to these requests.

In his brief in opposition, Wilson argues Satschel's motion to compel the FINRA documents should not be granted because Satschel's "claims are due to be denied"—i.e. Wilson was anticipating success on his motion to dismiss for alleged discovery abuses or on his motion for summary judgment. As explained in more detail elsewhere, Wilson had argued in those motions that Satschel's acquisition of ARQ and its successful application to operate an ATS through ARQ forecloses the award of any damages to Satschel on its complaint. See Docket No. 93 at 4-6. But both of those motions have been unsuccessful. The district court rejected Wilson's argument as a one-sided view of the evidence which the court concluded presented genuine issues of material fact.

---

[3] The discovery requests define CMA to mean "continuing membership application with FINRA." See Docket No. 65-15 at 3.

9

<u>Id.</u>  For similar reasons, this court recommended denial of the motion for discovery sanctions.  <u>See</u> Docket No. 95.

Wilson goes on to argue that Satschel intended to create its own ATS rather than using the system associated with liquiditymaker.com in Wilson's 2012-13 FINRA application.  Wilson argues that Satschel could have avoided any damages by using a different domain name or by explaining to FINRA in its application that the new system was different from the system previously presented and denied in 2012-13.

Wilson also argues that the parol evidence rule prohibits consideration of the evidence Satschel relies upon for its claim of fraud with regard to liquiditymaker.com—i.e. Wilson's oral statement that liquiditymaker.com had regulatory approval.  Finally, Wilson argues that Satschel could not reasonably rely on Wilson's representations.

But these arguments are not based on any of the rules of discovery.  Wilson's arguments all are based on his assertion that Satschel's claims lack merit and should be dismissed.  As stated above, that assertion has been rejected by the district court and this magistrate judge.  Additionally, any arguments as to the admissibility of the evidence are relevant to the trial in this matter, but they are not a bar to discovery.  Fed. R. Civ. P. 26(b)(1).

The discovery is clearly relevant to Satschel's claims.  Satschel states in its complaint:

> 23. Wilson represented that the website "liquiditymaker.com" was simply inactive but would be available to Satschel upon closing for its use.
>
> 24. In reality, VIA had previously filed an application with FINRA in 2013 (Matter ID: 20130366288) regarding liquiditymaker.com.
>
> 25. As part of that application, VIA's request for an expansion, to include the addition of private placement activities through liquiditymaker.com was denied.
>
> 26. Wilson never disclosed this and instead represented that the site would be available to Satschel [for use as an ATS], when in fact Wilson knew the site had been specifically denied the proper legal authority to do the very thing for which Satschel was purchasing the site.

See Docket No. 3 at 3-4.

In Satschel's fraud count Satschel specifically refers to the above alleged facts in support of its claim that Wilson's suppression of and misrepresentation of facts fraudulently induced Satschel to enter the contract. Id. at 4. The 2013 FINRA application is, therefore, the basis for one of Satschel's fraud claims.

Wilson has not shown that the discovery is privileged, unduly burdensome, or disproportionate to the needs of the case. Accordingly, the court will grant Satschel's motion to compel the FINRA documents requested in Satschel's requests for the production of documents numbers 9, 10 and 11.

11

## CONCLUSION

Based on the foregoing facts, law, and analysis, it is hereby

ORDERED that plaintiff Satschel's motion to compel [Docket No. 63] is granted in its entirety.  Wilson must produce the discovery ordered by the court in this opinion within 14 days of the date of this opinion unless, prior to the expiration of 14 days, a party files objections pursuant to the Notice below.  If objections are filed, production of the discovery is automatically stayed until the district court resolves the objections.  Production in that event will be according to the district court's order rather than this order.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections unless an extension of time for good cause is obtained.  FED. R. CIV. P. 6(b)(1), 72(a).  Failure to file timely objections will result in the waiver of the right to appeal this ruling.  United States v. Becerra, 73 F.4th 966, 972-73 (8th Cir. 2023).  Objections must be specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990).

DATED this 21st day of November, 2025.

BY THE COURT:

*Veronica L. Duffy*

VERONICA L. DUFFY

United States Magistrate Judge