UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SATSCHEL, INC.,<br>Plaintiff,<br>vs.<br>GREGORY WILSON,<br>Defendant. | 4:23-CV-04159-CCT<br>ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL<br>DOCKET NO. 127 |

**INTRODUCTION**

This matter is before the court on plaintiff Satschel Inc.'s complaint alleging defendant Gregory Wilson committed fraud in the inducement, recission and restitution, and breached its contract with Satschel. See Docket No. 3. Jurisdiction is premised on the diverse citizenship of the parties and an amount in controversy in excess of $75,000. See 28 U.S.C. § 1332. Pending is plaintiff's motion to compel discovery from Wilson. See Docket No. 127. Wilson opposes the motion. See Docket No. 131. This motion was referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A). See Docket No. 135.

## FACTS

Due to the extensive history of this case, the court will provide only a summary of the facts. More complete recitations of the facts can be found at Docket Nos. 92, 93 & 96.

In early 2022, Satschel desired to acquire an alternative trading system (ATS). Docket 69, at 2. According to Satschel, an ATS is "a SEC-regulated trading venue in which a computerized machine matches buy and sell orders of securities." Id. Satschel searched for broker-dealers to purchase in order to obtain an ATS.

Satschel and Wilson met in October 2022. Id. Satschel was looking to acquire Wilson's securities broker-dealer company, Variable Investment Advisors, Inc. (VIA), as VIA had regulatory authorization to operate an ATS. Id. Wilson emailed Satschel about an "ATS called Liquidity Maker, which is registered with the SEC, just not active." Id. Satschel claims attorney Michael Stegawski and Wilson represented that liquiditymaker.com already had ATS approval and "just needed to be turned on." Id. Satschel claims this information played a role in its decision to purchase VIA from Wilson. Docket No. 3, at 3-4.

A non-binding letter of intent was exchanged on November 14, 2022. Docket No. 69, at 3. Satschel claims Wilson knew the liquiditymaker.com domain could not operate an ATS because it failed a 2012-13 application, which Wilson failed to disclose to Satschel. Docket No. 3-1, at 5. Satschel also

claims Wilson stated that VIA was not subject to actual or threatened government investigations, despite Wilson knowing that there was a pending FINRA investigation at the time the agreement was signed. Id. at 5.

Satschel claims it learned of the failed 2012-13 liquiditymaker.com application after the agreement had already been made and that it only learned about the FINRA enforcement referral through its communications with FINRA. Docket No. 69, at 5. Satschel notified Wilson and Stegawski of the misrepresentations and filed the present lawsuit. Docket No. 3. Stegawski appeared in the lawsuit as counsel representing Wilson, along with local counsel.

During discovery, Wilson testified that Stegawski drafted the contract and communicated with both Wilson and Satschel during the drafting process. Docket No. 92 at 5. Wilson also testified Stegawski knew of the FINRA enforcement referral when he drafted the agreement, was in the background at the time Wilson submitted the unsuccessful 2012 application for liquiditymaker.com, and Wilson claimed he only read over the contract Stegawski drafted. Id. (citations omitted).

Due to Stegawski's involvement in the negotiation and drafting of the contract between the parties, the district court--applying the Shelton[1] test--determined it would be reasonably foreseeable for Stegawski to be called as a witness. The court accordingly disqualified him from further representing

[1] Shelton v. Amer. Motors Corp., 805 F.2d 1323 (8th Cir. 1986).

Wilson in this litigation to avoid Stegawski assuming the role of advocate and witness at the same time. See id. at 12.

After Stegawski's removal as counsel in this case, Satschel deposed Stegawski. Docket No. 128, at 4. During this deposition, Stegawski refused to answer questions relating to three different subjects. The first area of questioning related to Stegawski's litigation work on this case since his disqualification on November 5, 2025. Id. The second area Satchel sought to discover was when Stegawski first became aware of the pending FINRA investigation and enforcement referral. Id. at 6. The third area was the identity and general subject matter of Stegawski's prior SEC and FINRA representations of Wilson. Id. at 8. Both parties came to an impasse on these questions, and Satschel filed a motion to compel Stegawski to be deposed again to answer these questions. Id.

## DISCUSSION

### A. Meet and Confer

Both Federal Rule of Civil Procedure 37(a)(1) and District of South Dakota Local Rule 37.1 require as a precondition to the filing of any discovery motion that the parties meet and confer and attempt to resolve their disputes without the court's intervention. Satschel has filed a certification pursuant to Rule 37(a)(1) attesting that he fulfilled this obligation before bringing this motion. See Docket No. 130. Wilson does not dispute plaintiff's assertion. See Docket No. 131.

## B. Scope of Discovery

In a civil case "'[b]road discovery' is the norm." Stecklein & Rapp Chartered v. Experian Info. Sols., Inc., 113 F.4th 858, 861 (8th Cir. 2024) (quoting WWP, Inc. v. Wounded Warriors Fam. Support, Inc., 628 F.3d 1032, 1039 (8th Cir. 2011)). Under Federal Rule of Civil Procedure 26(b)(1)

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

See FED. R. CIV. P. 26(b)(1). Also, "Rule 26(b)(1) further defines relevance broadly to include not only information admissible at trial but also any information reasonably calculated to lead to the discovery of admissible evidence. This broad scope of discovery applies to depositions, and thus, instructions to a deponent not to answer certain questions are generally inappropriate." Pucket v. Hot Springs Sch. Dist. No. 23-2, 239 F.R.D. 572, 579 (D.S.D. 2006) (quotation omitted).

"There are only three instances when it is appropriate to instruct a deponent not to answer a question: (1) to preserve a privilege; (2) to enforce a court order limiting discovery; and (3) to present a motion to terminate the deposition that is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or a party." Id.

(citation omitted). The Federal Rule of Civil Procedure 37(a)(3)(B) allows a party to "move for an order compelling an answer, designation, production, or inspection" if "a deponent fails to answer a question asked under Rule 30 or 31." See FED. R. CIV. P. 37(a)(3)(B)(i). While "the standard for discovery is broader than for admissibility at trial, the requested information still has to clear a 'threshold...of relevance.' " Stecklein, 113 F.4th at 861 (quoting Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992)).

The advisory committee's notes to the 2000 amendments to Rule 26(b)(1) help to define the threshold of relevance.

> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action.

See FED. R. CIV. P. 26(b)(1) advisory committee's note.

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> > (i) expressly make the claim; and
> >
> > (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

See FED. R. CIV. P. 26(b)(5)(A).

**C. Work Product Doctrine**

In a diversity case such as this one, the court will "apply federal law to resolve work product claims and state law to resolve attorney-client privilege claims." Baker v. Gen. Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000) (citing Simon v. G.D. Searle & Co., 816 F.2d 397 (8th Cir.1987)).

The two types of work product are ordinary and opinion. Ordinary work product consists of raw factual information, and opinion work product includes "counsel's mental impressions, conclusions, opinions or legal theories." Id. at 1054 (citation omitted). "Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and . . ." they cannot obtain a substantially similar substitute. Id. (citing FED. R. CIV. P. 26(b)(3)). "In contrast, opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud." Id.

Additionally, "[t]he work product doctrine sharply limits the access of an opponent to materials 'prepared in anticipation of litigation or for trial.' " In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 924 (8th Cir. 1997) (quoting FED. R. CIV. P. 26(b)(3)) (citation omitted). "The party asserting the work-product doctrine bears the burden of establishing that the doctrine attaches to the material at issue." Selective Ins. Co. of S.C. v. Sela, No. 16-CV-

4077 (PJS/SER), 2017 WL 8315885, at *3 (D. Minn. Oct. 10, 2017) (citing In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 925 (8th Cir. 1997).

**D. Attorney-client Privilege**

S.D. Codified Laws § 19-19-502(b)[2] provide that

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:
>
> (1) Between himself or his representative and his lawyer or his lawyer's representative;
>
> (2) Between his lawyer and the lawyer's representative;
>
> (3) By him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein;
>
> (4) Between representatives of the client or between the client and a representative of the client; or
>
> (5) Among lawyers and their representatives representing the same client.

"South Dakota cases interpreting these statutes have held that four elements must be present to invoke the attorney-client privilege: (1) a client; (2) a confidential communication; (3) the communication was made for the purpose of facilitating the rendition of professional legal services to the client; and (4) the communication was made in one of the five relationships

[2] Definitions for a client, representation, lawyer, representative of a lawyer, and confidential communication are found under S.D. Codified Laws § 19-19-502(a).

enumerated in SDCL § 19–13–3." Lamar Advert. of S.D., Inc. v. Kay, 267 F.R.D. 568, 574–75 (D.S.D. 2010) (citations omitted).

### E. Application of the Law to Satchel's Discovery Requests

#### 1. Whether the Shelton test applies to the deposition questions of Wilson's disqualified counsel.

In his brief in opposition, Wilson applies the Shelton test to each of the three areas of inquiry as to which Stegawski did not answer questions. In Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 730 (2002), the Eighth Circuit explained that "[t]he Shelton test was intended to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy." The Shelton test was intended to curb abusive depositions directed at trial attorneys: "the protection Shelton provides to opposing counsel only applies because opposing counsel is counsel in the instant case . . ." Id.

While Stegawski was formerly Wilson's counsel on this case, the district court has disqualified him from further representing Wilson in this matter. See Docket No. 92 at 13. The Shelton test has already been applied to determine the removal of Stegawski; the court now considers whether that same test applies to evaluate the permissibility of the questions asked during Stegawski's deposition.[3]

---

[3] Wilson concedes "Stegawski was disqualified and is now sought solely as a nonparty witness, not Wilson's counsel." Docket 131 at 14.

Wilson claims that each piece of disputed discovery Satschel seeks from the deposition of Stegawski must pass the Shelton test. Docket No.131 at 16-17. But courts have held that the Shelton test is not relevant to the deposition of non-current trial counsel. In the case of McLeod v. Polaris Indus. Inc., Paul Vitrano was an attorney who was in-house counsel for Polaris Industries, and later served as Vice President of Global Government Relations, where he also provided legal advice. No. CV 3:26-MC-00002-TES, 2026 WL 2691261, at *1 (M.D. Ga. Sept. 14, 2026). The court determined that "Vitrano no longer serves as Polaris' current counsel so that the underlying concerns rationalizing the use of the three-part Shelton framework are not present." Id. at *3. The court allowed the deposition of Vitrano to proceed, assuming relevance and no undue burden. Id. at 3. The court said "[a]ny objections based on attorney-client privilege, work product doctrine, or other privileges may be made during Vitrano's deposition." Id.

Another similar case involved an attempt to quash the deposition notices of three in-house counsel lawyers. United States v. Philip Morris Inc., 209 F.R.D. 13, 14 (D.D.C. 2002). The court concluded that Shelton applies to the deposition of trial counsel only and not to in-house counsel not involved directly in representing the client in litigation. Id. at 18-19.

The cases Wilson cites where counsel's deposition itself has been limited by the Shelton test, all have one fact in common: they all involve the deposition

of *current* litigating counsel.[4] Since Stegawski had already been removed as counsel from this case at the time of his deposition, none of the concerns about harassing current trial counsel underpinning the Shelton decision are present. The court concludes the Shelton test does not apply to the disputed questions from Stegawski's deposition.

**2. Whether the deposition defied the scope of the district court's order.**

Wilson claims Satschel defied the scope of the court's order for Stegawski's deposition. Docket 131 at 1,7,11,16. Wilson asserts that "Satshel's deposition exceeded the Court-imposed bounds of seeking relevant, nonprivileged information *that only Stegawski knew.*" Docket No. 131 at 4 (emphasis added). The district court's order does not stipulate that Satschel may only depose Stegawski on information uniquely in his possession. Docket No. 92 at 13. Therefore, questions asked of Stegawski that went outside the scope of information known only to Stegawski did not defy the court's order.

**3. Whether the questions in Stegawski's deposition were relevant**

The court ordered that the deposition of Stegawski be on relevant information. Docket No. 92 at 13. Wilson claims that Satschel's deposition questions regarding Stegawski's communications with Wilson about this case post-disqualification are irrelevant. Docket No. 131 at 12.

---

[4] Smith-Bunge v. Wisconsin Cent., Ltd., 946 F.3d 420, 422 (8th Cir. 2019); Wilbur-Ellis Co. LLC v. Jens, No. 4:23-CV-04104-LLP, 2026 WL 1005098, at *1 (D.S.D. Apr. 14, 2026); Cascone v. Niles Home for Child., 897 F. Supp. 1263, 1264 (W.D. Mo. 1995).

Satschel seeks to have two questions answered: "whether Stegawski has communicated with Wilson about this case since he was disqualified on November 5, 2025, and whether he has worked on any motions in this case since November 5, 2025." Docket No. 133 at 11. Satschel claims the answers to these questions are relevant because it goes to "(1) whether this Court's Order has been violated; (2) Stegawski's willfulness, bias, and credibility as a witness regarding the fraud allegations; and (3) whether work product generated after the disqualification should be stricken." Id. at 13.

While Stegawski is allowed to communicate with Wilson specifically in the capacity as a non-party witness, he is not allowed to represent Wilson further in this litigation. See Docket No. 92 at 11-13. The first question as to whether Stegawski has communicated with Wilson about this case since his disqualification is relevant insofar as it lays foundation for the next question about whether Stegawski has worked on motions in this case.[5] That second question about whether Stegawski has worked on motions in this case is relevant for Satchel's aforementioned reasons of bias, credibility, potential violation of court orders, and whether work product needs to be stricken. Therefore, these questions regarding Stegawski's involvement in the case after his disqualification are relevant.

---

[5] "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." FED. R. EVID. 104(b).

Wilson also claims that questions about the SEC and FINRA investigative matters Wilson and his company VIA consulted Stegawski on are not relevant. Docket No. 131 at 11. Satschel correctly asserts this information is relevant because the past regulatory work concerns the denial of the 2013 application concerning liquiditymaker.com which is a central issue to this case. Docket No. 133 at 16. Also, this information would go to Wilson and Stegawski's bias, regulatory sophistication, and how they generally handle regulatory matters. Id. at 17.

Finally, Wilson claims that the timing of Stegawski learning of the pending FINRA investigation and enforcement referral is irrelevant. Docket No. 131 at 9. The court does not agree. Such information is relevant to whether Stegawski knew of this information before or after he drafted the parties' contract which states that " 'there are no lawsuits or governmental investigations pending or threatened against VIA or WIMO.' " Docket No. 133 at 8 (citing Stegawski Depo. at 156:12-21; 160:17-22.) This information would go to show a potential material misrepresentation in the contract by Wilson, Stegawski, or both.

**4. Whether work product doctrine protects conversations of Wilson and Stegawski post-disqualification.**

Wilson asserts work product doctrine protects the conversations between Wilson and Stegawski after his disqualification. Docket No. 131 at 12. However, "[t]he work product doctrine does not protect facts that concern 'the creation of work product or facts contained within work product' because the

doctrine is 'intended only to guard against divulging the attorney's strategies and legal impressions.' " Selective Ins. Co. of S.C. v. Sela, No. 16-CV-4077 (PJS/SER), 2017 WL 8315885, at *2 (D. Minn. Oct. 10, 2017) (citation omitted). Satschel seeks to know whether Stegawski has communicated with Wilson on the case since his disqualification and whether he has worked on motions in the case since his disqualification. Docket No. 133 at 11. Both questions only seek to establish the fact of a kind of communication existing, not the contents of the communications. Therefore, work product privilege does not protect these communications from the two questions and reasonable follow-up questions Satschel seeks to have answered.

**5. Whether attorney-client privilege protects the answers of questions asked of Stegawski in his deposition.**

Wilson claims attorney-client privilege protects the post-disqualification conversations about this case between himself and Stegawski. Docket No. 131 at 12. In South Dakota the elements needed to assert attorney a claim of client privilege are "(1) a client; (2) a confidential communication; (3) the communication was made for the purpose of facilitating the rendition of professional legal services to the client; and (4) the communication was made in one of the five relationships enumerated in SDCL § 19–13–3" See Lamar Advert. of S.D., Inc. v. Kay, 267 F.R.D. 568, 574–75 (D.S.D. 2010) (citations omitted). For element number four the relationship in this case is between a client and his lawyer. See S.D. Codified Laws § 19-19-502(b)(1).

In this case the client element is not met. "Client status is established in one of two ways. 'A "client" is a person ... who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from [her].' " Nylen v. Nylen, 2015 S.D. 98, ¶ 10, 873 N.W.2d 76, 79 (quoting SDCL § 19–19–502(a)(1)). The attorney-client privilege hinges on the *reasonable* belief of the client that they are "consulting a lawyer to obtain professional legal services." Id. at 79, 2015 S.D. 98, at ¶ 13 (citing State v. Catch the Bear, 352 N.W.2d 640, 645 (S.D. 1984)).

In Nylen, Mary Ellen Nylen was told by her friend I.S. (an attorney), that I.S. could not represent Mary Ellen, and Mary Ellen responded that she understood. Id. The court held that communications between Mary Ellen and I.S. that took place after that day were not protected by the attorney-client privilege. Id. at ¶ 8, 18.

While in this case there is no formal acknowledgement from Wilson that he is no longer represented by Stegawski, there is a court order that disqualifies Stegawski from further representing Wilson in this matter. Docket No. 92 at 13. Given this court order, Wilson cannot claim a reasonable belief that the attorney-client relationship exists for any trial or litigation work or litigation-related legal conversations Stegawski has with Wilson after Stegawski's disqualification. From that point forward, Wilson was no longer Stegawski's client for litigation purposes within the meaning of SDCL ¶19–19–502(a)(1) because he could no longer have a reasonable belief that Stegawski was representing him in this litigation. See Nylen, 2015 S.D. 98, at ¶ 18.

Wilson argues that communication between himself and Stegawski about the case in a lawyer-client capacity would not be in violation of the court's orders. See Docket No. 131 at 13. Certainly, Stegawski can communicate with Wilson about the facts within his knowledge about this case just as any witness in possession of relevant facts would be free to communicate with a party regarding those facts. The district court removed Stegawski in anticipation of him becoming a witness. Docket No. 92 at 12. However, the court has ordered that Stegawski not act as an attorney in this case. Docket No. 92 at 13. The South Dakota Rules of Professional Conduct Rule 1.2 explain in part the scope of representation of a lawyer and their client. Rule 1.2(d) says in part that "a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law."

Because Stegawski was removed from this case as a litigation lawyer for Wilson, any discussions between him and Wilson about the case in a lawyer-client capacity would be in violation of the court's orders. This means that the attorney-client privilege does not protect the answers to the questions of whether Stegawski has communicated with Wilson about the case since his disqualification and whether he has worked on motions in the case since his disqualification.

Wilson alleges Satschel seeks to discover the content of communications between himself and Stegawski regarding the FINRA investigation and enforcement referral. Docket No. 131 at 8. This is not true. Satschel has only ever claimed to seek the time of discovery of that referral, not what Wilson and Stegawski said to each other. Docket No. 128 at 15 and Docket No. 133 at 6. Attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney . . ." Upjohn Co. v. United States, 449 U.S. 383, 395 (1981). Satschel correctly asserts the South Dakota Supreme Court has held the same. See Voorhees Cattle Co. v. Dakota Feeding Co., 2015 S.D. 68, ¶ 14 & n.4, 868 N.W.2d 399, 406. The timing as to when Stegawski learned of the FINRA investigation and enforcement referral is an underlying fact, not a communication. Therefore, attorney-client privilege does not protect the answer to this question.

Wilson also argues that Satschel's deposition of Stegawski is motivated by a desire to obtain impeachment material as to the deposed attorney's client, which is improper. Docket No. 131 at 9. Wilson cites Voorhees in support of this assertion, but Voorhees is a fundamentally different case from this one. Docket No. 131 at 9. In Voorhees, the South Dakota Supreme Court held that the lower court improperly failed to apply the Shelton test as to a deposition of current litigation counsel. See Voorhees 2015 S.D. 68, at ¶ 15-16.

The statement in Voorhees that obtaining information from an attorney solely for impeachment of the client is improper applies to depositions of current litigation counsel, not counsel like Stegawski who have been removed from the case. Voorhees 2015 S.D. 68, at ¶ 16. In any case, Satschel did not depose Stegawski with the primary purpose of getting information to impeach Wilson, it seeks to discover when Stegawski learned of the FINRA investigation and enforcement referral to find out if he made material misrepresentations in the agreement between Satschel and Wilson when it was executed, as this would go to the heart of its fraud, deceit, and misrepresentations claim. See Docket No. 3 at 3. If Stegawski's answer to this question happens to impeach Wilson, that is secondary.

Finally, both Satschel and Wilson cite Brennan v. W. Nat. Mut. Ins. Co., 199 F.R.D. 660, 662 (D.S.D. 2001), in support of their arguments as to whether the identity and general subject matter of Stegawski's prior SEC and FINRA representations are privileged. Docket No. 133 at 15; Docket No. 131 at 10. Brennan states that, generally, a client's identity, fee amount, and general purpose of work performed are not protected by attorney-client privilege. Brennan, 199 F.R.D. at 662 (citing Clarke v. Am. Com. Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992)). However, information will be protected when it would "reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services performed, such as researching particular areas of the law." Id.

This case does not fall under the latter exception. Satschel asks for identity and general subject matter information, which are a part of the general rule. Wilson claims the exception applies here because he only consults Stegawski for complex or serious issues, so identifying the ones Stegawski worked on would show which ones are subjectively important. Docket No. 133 at 11. Aside from Wilson's statement about when he consults Stegawski, the significance of Wilson consulting Stegawski would not have been immediately apparent to Satschel in seeking otherwise unprotected facts such as the fact of the representation and the general purpose of the work performed. Wilson's voluntary disclosure of this information does not change the general nature of the information Satschel seeks. Therefore, this information is not protected by attorney-client privilege.

**6. Whether this magistrate judge and the district court have authority over Stegawski.**

Under Rule 37(a)(2) of the Federal Rules of Civil Procedure, "[a]motion for an order to a party must be made in the court where the action is pending. A motion for an order to a nonparty must be made in the court where the discovery is or will be taken." FED. R. CIV. P. 37(a)(2). Wilson contends that not only does this magistrate judge have no jurisdiction over Stegawski, but he also implies that the district court had no authority to order him to sit for a deposition either, as he "voluntarily traveled to Sioux Falls" for a deposition. Docket No. 131 at 14-15. But Stegawski's deposition was not voluntary, it was ordered, though the place of the deposition was not specified. See Docket No.

92 at 13. By traveling voluntarily to Sioux Falls to be deposed, Stegawski has waived any claim as to lack of personal jurisdiction.

Furthermore, if Stegawski is ordered back to Sioux Falls for a deposition, it would not be for a new deposition, but a continuation of the first one. See First Nat. Bank at Thermopolis v. W. Cas. & Sur. Co., 598 F.2d 1203, 1205–06 (10th Cir. 1979) (explaining that a second deposition after deponent declined to answer certain questions is a continuation of the first one). Authority over compelling non-parties to continue a deposition lies in the court where the first deposition took place. See id. at 1205. Therefore, the court has authority to order Stegawski to complete his unfinished deposition in Sioux Falls. Given the likely brief nature of a continued deposition, the parties may agree between themselves to conduct Stegawski's deposition by video to avoid unnecessary travel expenses.

**7. Whether a Florida court should issue future orders in relation to Stegawski.**

Wilson claims a Florida court should handle orders compelling Stegawski to testify because he is a Florida lawyer and Florida's rules of professional conduct will be implicated by his deposition in this case. Docket No. 131 at 15. This court finds this argument unpersuasive.

To appear *pro hac vice* in South Dakota, Stegawski filed a statement that he understands and will comply with the rules of the State Bar of South Dakota. See Docket No. 9; SDCL § 16–18–2; see Engineered Prods. Co. v. Donaldson Co., 290 F. Supp. 2d 974, 981 (N.D. Iowa 2003) (explaining that

when an attorney is admitted *pro hac vice* they must comply with the local rules of professional responsibility). If Stegawski had concerns that his potential involvement in a case in South Dakota could negatively implicate Florida's rules of professional responsibility, he could have refrained from voluntarily applying *pro hac vice* to take part in this case.

**8. Factual allegations going to the merits**

Satchel alleges in its factual statement that Wilson fraudulently induced its purchase by misrepresenting the status of liquiditymaker.com. Docket No. 128 at 2. Further, it says Stegawski drafted the contract as well as described the website as merely a "development project in 2012 that is inactive." Id.

Wilson takes issue with these factual statements. He claims Satschel already knew that liquiditymaker.com was unable to do the thing it was being purchased for prior to entering into the contract. Docket No. 131 at 18. Wilson also claims a domain name is not subject to securities regulatory status and that Stegawski never described the liquiditymaker.com website as merely an inactive 2012 development project. Docket No. 131 at 18.

In this litigation, Wilson has already filed a Rule 12 motion to dismiss, a motion for partial summary judgment, and a motion for summary judgment. See Docket Nos. 16, 21, & 82. The district court has denied each of these motions, holding that genuine issues of material fact exist that prevent the entry of judgment as a matter of law in Wilson's favor and that necessitate a jury trial. See Docket Nos. 51 & 82. Questions as to whether Wilson

fraudulently induced Satchel or whether Satchel was in possession of all true relevant facts before entering into the contract will be decided by a jury. The court need not decide these issues at this juncture in order to address Satschel's motion to compel.

**9. Sanctions**

Rule 37(a)(5) of the Federal Rules of Civil Procedure states that if the court grants a motion to compel, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." See FED. R. CIV. P. 37(a)(5) (emphasis supplied). The award of expenses is mandatory unless the court finds that the moving party failed to confer in good faith with the responding party prior to filing the motion, the responding party's refusal to respond was substantially justified, or other circumstances make an award of expenses unjust. Id. Satschel has requested as part of the remedy in granting its motion to compel that Wilson be required to pay its reasonable costs and attorney's fees.

If Satschel wishes to have the court award attorney's fees, it shall file a motion seeking such relief within 30 days from the date of this order. Satschel's motion should include an itemized accounting of attorney and paralegal time spent on the motion, the hourly rate(s), information about the attorney and/or paralegal in support of the hourly rate(s), and any law or

argument concerning whether Wilson's position was substantially justified. Wilson shall have 21 days after service of Satschel's motion to respond or object thereto. Satschel may file a reply brief within 14 days thereafter. The court does order that the cost of the court reporter for the resumed deposition be borne by Wilson.

## CONCLUSION

Based on the foregoing facts, law, and analysis, it is hereby

ORDERED that Satschel's motion to compel the continuation of Michael Stegawski's deposition [Docket No. 127] is granted. Satschel may finish its deposition of Micheal Stegawski by asking the limited set of questions Stegawski refused to answer, and reasonable follow-up questions that come from those answers.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections unless an extension of time for good cause is obtained. FED. R. CIV. P. 6(b)(1), 72(a). Failure to file timely objections will result in the waiver of the right to appeal this ruling. United States v. Becerra, 73 F.4th 966, 972-73 (8th Cir. 2023). Objections must be specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990).

DATED this 30th day of October, 2026.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge